○

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

COMPASS BANK,                        §
                                     §
              Plaintiff,             §
                                     §
v.                                   §    Civil Action No. L-10-8
                                     §
CELINA VILLARREAL, et al.,           §
                                     §
              Defendants.            §

**MEMORANDUM AND ORDER**

Pending are Plaintiff Compass Bank's third motion for default judgment against Defendants Robert Lozano and INXSS Motors, Inc. (Dkt. 145), and the Bank's "Application for Attorneys' Fees and Costs" ("fee motion"), filed October 28, 2010 (Dkt. 128). Responses from Lozano and INXSS were due on November 29, 2010. See Local Rules 7.3, 7.4. Neither has responded.

**I. BACKGROUND**

**A.   Compass Bank's First Motion for Default Judgment**

Compass Bank filed its first motion for default judgment on June 17, 2010. (Dkt. 91.) The motion was supported by a declaration from Attorney Barbara Whiten Balliette (Dkt. 91-4, 1st Balliette Decl.), and a declaration from the Bank's fraud investigator, Kathy Mueller (Dkt. 91-3, Mueller Decl.).

Compass Bank filed its Original Complaint on February 3, 2010. (Dkt. 1.) Defendant Lozano was served with a summons and a copy of the Original Complaint on February 5, 2010. (Dkt. 23.)[1] Lozano and INXSS's counsel is Attorney Andres Ramos.[2] Shortly after Compass Bank filed its Original Complaint, the Bank reached an agreement with Lozano and the other individual Defendants named in that pleading that the parties would conduct expedited depositions and written discovery regarding Defendants' assets. (Dkt. 33 at 1.) In an Order of February 10, 2010, the Court ordered the depositions and written discovery according to the agreed schedule, Defendants' responses to the Bank's written discovery requests being due on February 23, 2010. (Id.) Attorney Balliette avers that Lozano appeared for the limited deposition on February 17, 2010, but neither Lozano nor INXSS responded to the Bank's written discovery requests. (Dkt. 91-4 at ¶ 9.)

---

[1] Lozano was served as an individual defendant and as the registered agent of INXSS.

[2] Attorney Ramos filed a notice of appearance as Lozano's attorney of record on February 22, 2010. (Dkt. 54.) No notice of appearance has been filed for INXSS. However, Ramos is listed on the docket sheet as INXSS's counsel. He signed an Agreed Protective Order of February 23, 2010 as "Counsel for Robert Lozano and INXSS Motors, Inc." (Dkt. 55 at 8), and he signed a stipulation submitted on October 21, 2010, as "Attorney-in-Charge for Robert Lozano and INXSS Motors, Inc." (Dkt. 126 at 2.)

The deadline for Lozano and INXSS to file answers or Rule 12 motions in response to the Bank's Original Complaint was February 26, 2010.   See Rule 12(a)(1)(A)(i), Fed. R. Civ. P. Lozano and INXSS filed neither.   On April 4, 2010, the Bank and Defendants Celina Villarreal, Robert R. Reina, II, Robert R. Reina, Sr., Raymond Reina, and Reina's Ultra Lounge, Inc., filed a motion for entry of an agreed scheduling order.   (Dkt. 77.) Lozano and INXSS did not join that motion, which stated that "Lozano and INXSS Motors have not responded to Compass Bank's requests concerning the schedule or the joint motion."   (Id. at 1.)   Attorney Balliette avers that Lozano did not appear at his regular deposition, noticed for April 7, 2010.   (Dkt. 91-1 ¶ 9.)   That averment is supported by certificates of non-appearance.   (Dkt. 91-2 at 67–75.)

Compass Bank filed its First Amended Complaint on March 22, 2010.   (Dkt. 68.)   Electronic notice of that filing was sent to Attorney Ramos.   (ECF Electronic Notice Receipt for Dkt. 68.) Answers or Rule 12 motions were due from Lozano and INXSS on April 5, 2010.   Rule 15(a)(3), Fed. R. Civ. P.   Lozano and INXSS did not file Answers to the First Amended Complaint until July 1, 2010, 18 days after the Bank filed its first motion for

default judgment.  (See Dkt. Nos. 95, 96.)[3]  Lozano and INXSS did
not otherwise respond to that motion.

     The Court denied Compass Bank's first motion for default
judgment in an Order of July 26, 2010.  (Dkt. 99.)  However, the
Court noted that "Lozano and INXSS appear to have severely
neglected their duties to file timely answers and participate in
discovery . . . ."  (Id. at 5.)  The Court also noted that it is
unacceptable for a litigant to neglect his duty to file a
pleading until he is threatened with default judgment, and to
then "simply file an answer and ignore all other obligations in
the case."  (Id.)  The Court ordered Lozano and INXSS to do the
following, on or before August 11, 2010:

> (1) Provide the Court and the other parties with the
>     disclosures required under Rule 26(a);
>
> (2) Respond to the Bank's expedited written discovery
>     requests regarding Lozano's and INXSS's assets;
>
> (3) Contact Compass Bank's counsel to arrange for Lozano
>     to be deposed at a time well before the close of
>     discovery on September 3, 2010;
>
> (4) Show cause as to why the Court should not order that
>     Lozano and INXSS pay the costs and attorneys' fees
>     Compass Bank incurred in the preparation and filing of
>     the motion for default judgment and its supporting
>     exhibits;

---

[3] Lozano's and INXSS's July 1, 2010, Answers were both titled
"Response to Plaintiff Compass Bank's Original Complaint."
However, the Court has found that the Answers' substance is best
construed as responding to the Bank's First Amended Complaint,
rather than the superseded Original Complaint.  (Dkt. 99 at 3-4
n.2.)

> (5) Show cause as to why the Court should not order that Lozano and INXSS pay the costs and attorneys' fees incurred by the parties (Compass Bank and Defendant Villarreal) who appeared for Lozano's deposition scheduled April 7, 2010.

(Id. at 6-7.)  The Court also ordered Lozano "to respond to any subsequent written interrogatories, requests for written discovery, or requests for admissions from Compass Bank within the time limits provided by Rules 33(b)(2), 34(b)(2)(A), and 36(3)."  (Id. at 7.)

## B.   The Bank's Second Motion for Default Judgment

Lozano and INXSS did not file responses to the Court's instruction, in the July 26, 2010, Order (Dkt. 99), that they show cause as to why they should not be ordered to pay the costs and fees incurred due to Lozano's skipped deposition and the Bank's preparation of the first motion for default judgment. Compass Bank filed a second motion for default judgment on August 18, 2010 (Dkt. 104), supported by a second declaration from Attorney Balliette (Dkt. 104-1, 2nd Balliette Decl.). Balliette avers that "as of August 18, 2010, neither Robert Lozano nor INXSS Motors had:

> (1) Provided Compass Bank with the disclosures required under Rule 26(a);
>
> (2) Responded to Compass Bank's expedited written discovery requests regarding Lozano's and INXSS's assets; or

> > (3) Contacted Compass Bank's counsel to arrange for Lozano
> > to be deposed . . . ."

(Id. at ¶ 3.)  The deadline to respond to the Bank's second motion for default judgment was September 8, 2010.  See Local Rule 7.3, 7.4.  Lozano and INXSS did not respond.

The Court heard the second motion for default judgment on October 7, 2010.  Attorney Ramos was present.  (Minute Entry for October 7, 2010.)  The Court admonished Ramos for his and his clients' failure to participate in the litigation.  Ramos explained that he had not been participating in the case because he had not been paid.  However, he stated that he and Lozano had recently made payment arrangements under which Ramos would resume working on the case.

The Court denied the Bank's second motion for default judgment without prejudice in its October 12, 2010, Order disposing of various motions heard at the October 7 hearing. (Dkt. 115.)  The Court ordered Ramos and the Bank's counsel to confer and to "file a joint stipulation concerning what Lozano and INXSS must do to remedy their failure to participate in the litigation . . . ."  (Id. at 2.)  The Court also ordered that Lozano and INXSS compensate the Bank for the reasonable expenses "incurred in the preparation of the Bank's first motion for default judgment (Dkt. 91), the Bank's 2nd motion for default judgment (Dkt. 104), and the deposition at which Lozano failed

to appear." (Dkt. 115 at 2.) The Court advised the Bank that it would need additional documentation of the Bank's fees and costs for these items in order to determine the amount owed by Lozano and INXSS. (Id.)

The Bank, Lozano, and INXSS filed their joint stipulation on October 21, 2010. (Dkt. 126.) They stipulated that Lozano and INXSS Motors would:

> (1) Answer Compass Bank's Second Amended Complaint within the time period prescribed by the Federal Rules of Civil Procedure;
>
> (2) Provide the Court and the other parties with the disclosures required under Rule 26(a) by November 1, 2010;
>
> (3) Respond to the Bank's expedited written discovery requests regarding Lozano's and INXSS's assets, by serving both written responses to the discovery requests and producing responsive documents, by November 1, 2010; and
>
> (4) Contact Compass Bank's counsel by November 1, 2010, to arrange for Lozano to be deposed after all new defendants have been served.

(Id.) They also stipulated that if Lozano and INXSS failed to take these actions, Compass Bank would be entitled to file a third motion for default judgment and Lozano and INXSS would compensate the Bank for all reasonable costs and attorneys' fees incurred in preparation of the joint stipulation. (Id. at ¶ 3.)

C.   <u>The Bank's Motion for Fees and Costs</u>

On October 28, 2010, Compass the Bank filed an "Application for Attorneys' Fees and Costs" ("fee motion") (Dkt. 128), in response to the Court's request for additional documentation regarding its fees and costs for the first and second motions for default judgment and for Lozano's skipped deposition.  The fee motion includes a declaration by Attorney Jason Davis (Dkt. 128-1), in which Davis avers that the Bank incurred $18,125.00 in attorney's fees and costs in relation to the first and second motions for default judgment and the deposition. (<u>Id.</u> at ¶ 8.)  Davis's declaration is accompanied by an itemized breakdown of the time expended on these tasks by the Bank's counsel's attorneys and paralegals.  (<u>Id.</u> at Ex. A-1.)  Lozano and INXSS's deadline to respond to the fee motion was November 18, 2010.  Local Rules 7.3, 7.4.  Neither responded.

D.   <u>The Bank's Third Motion for Default Judgment</u>

The Court's Order of October 12, 2010, authorized the Bank to file a Second Amended Complaint, effective that day. (Dkt. 115 at 1.)  An answer or Rule 12 motion in response to the Bank's Second Amended Complaint (Dkt. 103) was due from Lozano and INXSS on October 26, 2010.  Rule 15(a)(3), Fed. R. Civ. P. Neither filed an answer or motion.  On the Court's instruction, the Clerk of the Court entered default against Lozano and INXSS

on November 1, 2010.  (Dkt. Nos. 129, 134, 136.)

The Bank filed the instant motion for default judgment on November 9, 2010.  (Dkt. 145.)  That motion incorporates the briefing and supporting documentation provided in the Bank's prior motions for default judgment (Dkt. Nos. 104, 91).  (Dkt. 145 at ¶¶ 3–4.)  The instant motion for default judgment is also supported by an additional declaration from Attorney Davis (Dkt. 145-2), and a declaration from another of the Bank's attorneys, Terry McCreight (Dkt. 145-1).  McCreight avers that, as of November 8, 2010, Lozano and INXSS had not:

> (1) Answered Compass Bank's Second Amended Complaint;
>
> (2) Provided the Court and the other parties with the disclosures required under Rule 26(a);
>
> (3) Responded to the Bank's expedited written discovery requests regarding Lozano's and INXSS's assets, by serving both written responses to the discovery requests and producing responsive documents; and
>
> (4) Contacted Compass Bank's counsel to arrange for Lozano to be deposed after all new defendants had been served.

(Id. at 3.)  Responses from INXSS and Lozano were due on November 30, 2010.  See Local Rules 7.3, 7.4.  Neither responded.

## II. APPLICABLE LAW

### A. Default Judgments Under Rule 55 and Rule 37(b)

Federal Rules of Civil Procedure 55 and 37(b) are pertinent to default judgment in circumstances like those of this case. Rule 55 authorizes an entry of default when a properly noticed party fails to appear in a case, appears but fails to file a pleading, or "fail[s] to . . . otherwise defend" the lawsuit. Rule 55(a). In any of these scenarios, the claimant "'is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.'" Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001) (quoting Ganther v. Ingle, 75 F.3d 207, 212 (5th Cir. 1989)). If the plaintiff's claim is not for a sum certain or a sum that can be made certain by computation, he must apply to the Court for a default judgment. Rule 55(b)(2).

Whether to issue a default judgment is "'committed to the discretion of the district judge.'" Lewis, 236 F.3d at 767 (quoting Mason v. Lister, 562 F.2d 343, 345 (5th Cir. 1977)). '"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" Id. (quoting Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n, 874 F.2d 274, 276 (5th Cir. 1989)). Default judgments are typically appropriate only when a party has abandoned the case and "'the adversary process has been

halted because of [the] essentially unresponsive party.'" <u>Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n</u>, 874 F.2d 274, 276 (5th Cir. 1989) (quoting <u>H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe</u>, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Rule 37(b) provides sanctions that may be imposed on a party for failing to comply with court orders:

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

    (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    (iii) striking pleadings in whole or in part;

    (iv) staying further proceedings until the order is obeyed;

    (v) dismissing the action or proceeding in whole or in part;

    (vi) rendering a <u>default judgment</u> against the disobedient party; or

    (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 37(b)(2)(A) (underlining added). Rule 37(b) also requires that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that

party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Rule 37(b)(2)(C). Rule 37(d) requires the Court to order a party who has failed to attend its own deposition, "the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make the award of expenses unjust." Rule 37(d)(3).

A default judgment or dismissal under Rule 37(b) requires a clear record of delay or contumacious conduct. See Coane v. Ferrara Pan Candy, Co., 898 F.2d 1030, 1032 (5th Cir. 1990) ("[D]ismissal with prejudice [under Rule 37(b)] typically is appropriate only if the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct."); cf. Elizondo v. Pilgrim's Group, Inc., No. 96-40281, 100 F.3d 952, 1996 WL 625327, *6 (5th Cir., Oct. 1, 1996) (unpublished table disposition) (reversing default judgment imposed as a sanction under Rule 16(f) because "there [was] insufficient evidence of the type of contumacious behavior envisioned by our prior cases addressing the use of dismissals and default judgments as a sanction."). The Fifth Circuit has set forth four factors that should be considered

before granting a default judgment or dismissal under Rule
37(b). <u>U.S. For Use of M-CO Const., Inc. v. Shipco General,
Inc.</u>, 814 F.3d 1011, 1013 (5th Cir. 1987); <u>Batson v. Neal Spelce
Associates, Inc.</u>, 765 F.2d 511, 514 (5th Cir. 1985).  First,
default judgment is authorized only when the failure to comply
was willful or in bad faith rather than simply due to inability
to comply.  <u>See</u> <u>Shipco</u>, 814 F.3d at 1013; <u>Batson</u>, 765 F.2d at
514.  Second, default judgment is not proper when less drastic
sanctions would effect the goals of Rule 37(b).  <u>See</u> <u>Shipco</u>, 814
F.3d at 1013; <u>Batson</u>, 765 F.2d at 514.  Third, the district
court should also consider whether the failure to comply would
substantially prejudice the opposing party's preparation for
trial.  <u>See</u> <u>Shipco</u>, 814 F.3d at 1013; <u>Batson</u>, 765 F.2d at 514.
Finally, the default judgment may be inappropriate when neglect
is plainly attributable to an attorney rather than a blameless
client, or a sincere misunderstanding of the court's orders.
<u>See</u> <u>Shipco</u>, 814 F.3d at 1013; <u>Batson</u>, 765 F.2d at 514.

B.   <u>The Effect of Default</u>

By defaulting, a defendant "admits the plaintiff's well-
pleaded allegations of fact, is concluded on those facts by the
judgment, and is barred from contesting on appeal the facts thus
established." <u>Nishimatsu Constr. Co. v. Houston Nat'l Bank</u>, 515
F.2d 1200, 1206 (5th Cir. 1975) (cited in <u>CJC Holdings v. Wright</u>

& Lato, Inc., 979 F.2d 60, 66 n.4 (5th Cir. 1992)).  However, "[a] default is not treated as an absolute confession by defendant of his liability and of the plaintiff's right to recover."  Id.  Rather, the Court is obliged to limit the default judgment to the claims supported by the facts set forth in the claimant's pleading.  See id.  ("The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law."); see also Atlantic Recording Corp. v. Lopez, 5:06-cv-179, 2007 WL 2010752, *1 (S.D. Tex., July 5, 2007) (unpublished) (Alvarez, J.) ("[T]he best reading of the case law is that default judgment may be awarded only if the facts alleged in the complaint, if assumed true, would establish liability as a matter of law." (citing Nishimatsu, 515 F.2d at 1206)).

The Court must also ensure that the claimant's damages are supported by evidence.  Shipco, 814 F.3d at 1014 ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").  Rule 55 provides that "[t]he court may conduct hearings or make referrals——preserving any federal statutory right to a jury trial——when, to enter or effectuate judgment, it needs to:

   (A) conduct an accounting;

   (B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter."

Rule 55(b)(2).   The Rule states that "[i]f the party against whom default judgment is sought has appeared personally or by a representative, that party or the representative must be served with written notice of the application [for default judgment] at least 7 days before the hearing."   Rule 55(b).   The Court is not required to hold such a hearing.   James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).   The Court may forgo an evidentiary hearing when "plentiful evidence on the [defaulting litigant's] conduct has been received . . . ."   Id.[4]

---

[4] The James Court found support for this holding in language that was eliminated from Rule 55 by an amendment in 2007.   James, 6 F.3d at 310 ("[Rule 55] reads, in pertinent part: . . . 'the court may conduct such hearings or order such references *as it deems necessary and proper* . . . .' (Emphasis added).") However, the 2007 amendment was "intended to be stylistic only," Rule 55, advisory committee note, and district courts in this circuit continue to rely on the James Court's holding.   E.g., Isenberg v. Chase Bank USA, N.A., 661 F.Supp.2d 627, 630 (N.D. Tex. 2009); Lijadu v. I.N.S., Civ. A. 06-0518, 2009 WL 508040, *8 (W.D. La. Feb. 26, 2009) (unpublished).

### III. DISCUSSION

**A.  Whether Default Judgment is Merited**

Litigation between the Bank and Lozano and INXSS has effectively been halted since Lozano appeared for the limited deposition regarding his and INXSS's assets on February 17th, 2010.  Lozano has not been deposed and he has not cooperated with the Bank's efforts to schedule a deposition.  He and INXSS have also failed to respond to the Bank's requests for written discovery.  The Bank's ability to prepare for trial is substantially prejudiced under these circumstances.

Lozano and INXSS made no effort to explain their lapses prior to the October 7, 2010, hearing.  They filed nothing in response to the Bank's first motion for default judgment other than their untimely answers to the Bank's First Amended Complaint, and they did not respond to the Bank's second motion for default judgment at all.  At the October 7, 2010, hearing, Attorney Ramos represented that his clients' lapses occurred because he had not been paid, and that the situation had been fixed.  Lozano's and INXSS's intransigence nevertheless continued.  They have done none of things they promised in the October 21 joint stipulation, including filing an answer or Rule 12 motion in response to the Bank's Second Amended Complaint.  Nor have they made any attempt to explain these omissions.  They did not respond to the Bank's fee motion (Dkt. 128), nor to its

third motion for default judgment filed November 9, 2010
(Dkt. 145).

Lozano and INXSS's failures cannot have been other than
willful. Attorney Ramos has received notice of all of the
motions and orders in this case. He was admonished for INXSS
and Lozano's lapses at the October 7, 2010, hearing, and he was
necessarily aware of the promises made in the October 21 joint
stipulation, which he signed on his clients' behalf. (Dkt. 126
at 2.) The tasks that Lozano and INXSS were obliged to perform
were clearly and specifically set forth in the joint stipulation
(Dkt. 126) as well as the Court's Order of July 26, 2010
(Dkt. 99). There is no indication that Ramos could have
sincerely misunderstood what was required of his clients. The
record does not show whether and to what extent their failures
are attributable to their counsel, but there is no indication
that Lozano and INXSS are blameless, or that Ramos has left them
entirely unaware of the situation.[5]

Litigation of the Bank's claims against Lozano and INXSS
has been halted by their obstinate refusal to participate in
this case. The Court has tried to induce Lozano and INXSS to
meet their obligations with sanctions less severe than default

---

[5] The Court notes that until February 24, 2011, INXSS's other
owner, Defendant Reina II, was represented by a different
attorney, who also received notice of every unsealed order and
motion filed in this case.

judgment, but the Court's efforts have failed.  In addition to generally disregarding their obligations under the Federal Rules of Procedure, Lozano and INXSS have ignored the Court's specific orders regarding particular discovery tasks, as well as their own promises to perform specific tasks.  Moreover, after being reprimanded for their failures and stipulating that they would take particular actions to remedy the situation, Lozano and INXSS did none of the things they promised.  In the face of this clear record of delay and contumacious conduct, the Court finds that sanctions less severe than default judgment will not suffice to correct the situation.  Accordingly, default judgment is merited against Lozano and INXSS under Rules 37 and 55, Fed. R. Civ. P.

**B.    <u>Compass Bank's Well-Pleaded Facts & Evidence of Damages</u>**

It remains for the Court to assess the extent of INXSS's and Lozano's liability and the amount of the Bank's damages.  As noted above, by defaulting Lozano and INXSS have admitted the factual allegations in Compass Bank's Second Amended Complaint. They have also admitted to the factual averments in the February 3, 2010, affidavit from the Bank's fraud investigator, Kathy Mueller (Dkt. 103-1), which was filed as an attachment to the Bank's Original, First Amended, and Second Amended Complaints. (Dkt. Nos. 1-1, 68-1, 103-1.)  <u>See</u> Rule 10(c), Fed. R. Civ. P.

("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

For reasons explained below, at this time the Court will issue judgment against Lozano and INXSS only for the Bank's unjust enrichment and Texas Theft Liability Act claims.  For the purposes of assessing the damages and restitution owed by Lozano and INXSS on those claims, the Court will rely on Mueller's affidavit (Dkt. 103-1), her declaration of June 15, 2010 (Dkt. 91-1), submitted with the Bank's first motion for default judgment, the exhibits the Bank submitted at the preliminary injunction hearing of February 23, 2010, and Mueller's live testimony at that hearing.  This evidence suffices to establish the amount of Lozano's and INXSS's liability for the unjust enrichment and Texas Theft Liability Act claims without need of a hearing.  The declarations by Attorney Jason Davis (Dkt. Nos. 128-1, 145-2) provide sufficient evidence of the amount of the Bank's fees.

Taken as true, the factual allegations in Compass Bank's Second Amended Complaint (Dkt. 103), Mueller's affidavit (Dkt. 103-1), and Mueller's declaration (Dkt. 91-3) establish the following:

Defendant Celina Villarreal was employed in the "Wealth Management Division" of Compass Bank's Laredo office from 1998 until December, 2009.  (Dkt. 103 at ¶ 24.)  In December, 2009,

the Bank discovered that during 2009 Villarreal had effected 42 debits from accounts belonging to customers who did not authorized the debits.  (Id. at ¶¶ 32–60.)  Villarreal credited the funds to customer accounts belonging to four businesses, including INXSS, owned and controlled by her associates. (Id.) The amount credited to those businesses' accounts over the course of the transfers from non-consenting customers' accounts was $4,715,545.27.  (Id.)  Villarreal credited $3,717,545.27 of the funds taken through those transfers to two accounts belonging to Defendant Reina's Ultra Lounge, including account xxxxxx2440, for which Defendants Reina II and Reina Sr. are the authorized signors.  (Id. at ¶¶ 33–34.)  In the course of 33 transfers between January and December, 2009, account xxxxxx2440 was credited with $3,597,545.27 that Villarreal had debited from non-consenting customers' accounts.  (Id.)[6]  Most of those funds had been removed by the time the Bank discovered Villarreal's activities.    As  of  February  3,  2010,  account  xxxxxx2440's remaining balance was $158,734.36.  (Id. at ¶ 37.)

Villarreal used some of the funds she had credited to account xxxxxx2440 for cashiers checks.  (Id. at ¶ 30.)  Three such checks name Lozano as payee: Check # 45180375, issued May

---

[6]  Villarreal  also  credited  $120,000.00  directly  from  non-consenting  customers  to  a  different  Reina's  Ultra  Lounge account,  Account  xxxxxx1978.    (Dkt.  103  at  ¶  42.)    As  of February  3,  1010,  that  account's  balance  was  $11,362.00.    (Id. at ¶ 37.)

1, 2009, for $25,000.00; Check # 45180433, issued May 26, 2009, for $40,000.00, and Check # 45180619, issued August 3, 2009, for $10,000.00. (Dkt. 91-3, Mueller Decl., at ¶ 9, Ex. B-4.) Villarreal also debited funds from account **xxxxxx2440** and credited them to accounts belonging to other corporate Defendants, including INXSS. (Dkt. 103 at ¶ 30.)[7]

Defendants Lozano and Reina II own and control INXSS. (Id. at ¶ 153.) They opened an account at the Bank for INXSS on August 4, 2009. (PI Hearing Exhibits at 466–68; Dkt. 103 at ¶ 46.) As of September 1, 2009, the balance of INXSS's account, number **xxxxxx2024**, was zero. (PI Hearing Exhibits at 390.) On September 18, 2009, Villarreal moved $5,000.00 from Reina's Ultra Lounge's Account **xxxxxx2440** to INXSS's account. (Dkt. 91-3, Mueller Decl., at ¶ 6, Ex. B-2; PI Hearing Exhibits at 390, 393.) Villarreal subsequently credited INXSS's account with $700,000.00 that was debited directly from accounts of non-consenting customers: $75,000.00 on October 5, 2009; $75,000.00 on November 3, 2009; $200,000.00 on November 18, 2009; and $350,000.00 on December 1, 2009. (Dkt. 91-3, Mueller Decl., at ¶ 4, Ex. B-1; see also Dkt. 103 at ¶ 46; Dkt. 103-1, Mueller Aff., at ¶ 19, Ex. 1-D.) By January 15, 2010, all but

---

[7] Other recipients of transfers or cashiers checks using funds moved through Reina's Ultra Lounge's Account **xxxxxx2440** included Defendants Delia Reina, Erica Contreras, Fly's & Turkey's, Co., Raymond Reina, Reina II, Yvonne Reina-Benavides, Elaine Reina, Gerardo Benavides, and Johanna Espinoza. (Dkt. 103 at ¶ 30.)

$15,516.43 had been withdrawn from INXSS's account. (Dkt. 103 at ¶ 49.)

Neither Lozano nor INXSS has returned any of the $700,000.00 transferred from the accounts of non-consenting customers, the $5000.00 transferred from the Reina's Ultra Lounge Account, or the three cashiers checks naming Lozano as payee. (Dkt. 91-3, Mueller Decl., at ¶¶ 7, 10.)

The Bank also discovered that throughout 2009, Villarreal had issued $867,782.00 in cashiers checks using funds debited from customer accounts without authorization. (Id. at ¶¶ 28, 61–69; Dkt. 103-1 at 19, Ex. 1-G.) Villarreal and Defendants Reina II, Reina Sr., and Raymond Reina used the checks to purchase a condominium, a boat, and several cars. (Dkt. 103 at ¶¶ 61–69.) Two checks were issued on November 19, 2009, with Defendant Raymond Reina as payee, Check # 45180845, for $35,931.51, and Check # 45180848, for $40,000.00. (Dkt. 103-1 at 19, Ex. 1-G.) At least one of these checks was used to purchase three vehicles from INXSS. (Dkt. 103 at ¶ 68.) However, the Bank has not supplied the Court with evidence establishing the precise amount INXSS received through that purchase.

In total, during 2009 Villarreal made over $8 million worth of unauthorized transactions, resulting in a loss to the Bank of approximately $5.5 million. (Id.) The Bank also discovered

that in 2006, 2007, and 2008, Villarreal issued unauthorized and unsecured loans totaling at least $836,000.00. (Id. at ¶¶ 31, 70.) These loans were made "to various defendants . . . including Delia Reina, Erica Contreras, Raymond Reina, Reina II, Hector Benavides, and Yvonne Reina-Benavides." (Id. at ¶ 31.) The Bank alleges that all of the other Defendants knew that Villarreal had misappropriated the funds that they received by way of the unauthorized loans, inter-account transfers, and cashiers checks. (Id. at ¶¶ 101; 106; 111; 120; 141.)

When confronted in December, 2009, Villarreal admitted that she had transferred funds from Compass Bank customers' accounts without authorization. (Dkt. 103 at ¶¶ 24, 25; Dkt. 103-1, Mueller Aff., at ¶¶ 5-6.) Compass Bank terminated her employment and froze the corporate Defendants' accounts. (Dkt. 103-1, Mueller Aff., at ¶ 7.) After Villarreal's employment was terminated, Defendant Reina II contacted the Bank. (Id.) Reina II claimed that all of the funds in "his accounts" came from "cash and credit deposits from running his bar, Reina's Ultra Lounge, Inc." (Id.)

## C.   Compass Bank's Claims

The Bank has brought the following claims against Lozano and INXSS:

> (1) Unjust enrichment and restitution (Dkt. 103 at ¶¶ 143-146);

(2) Conversion (Id. at ¶¶ 134–138);

(3) State-law fraud (Id. at ¶¶ 123–129);

(4) Aiding and abetting breach of fiduciary duty (Id. at ¶¶ 118–122);

(5) Violations of the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§ 134.001–.005 (Dkt. 103 at ¶¶ 108–12) (against INXSS);

(6) Violations of 18 U.S.C. §§ 1962(c) of the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. §§ 1961–68 (Dkt. 103 at ¶¶ 86–90);

(7) Violations of 18 U.S.C. §§ 1962(d) of the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. §§ 1961–68 (Id. at ¶¶ 88–90);

(8) Civil conspiracy (Id. at ¶¶ 139–142);

(9) Imposition of constructive trust (Id. at ¶¶ 147–150).

The Bank does not bring its Texas Theft Liability claim against Lozano.

C.1 *Unjust Enrichment*

Unjust enrichment encompasses a number of equitable doctrines designed to prevent a party from retaining benefits conferred by another without compensation. When one party has been unjustly enriched by receiving money that in equity and good conscience belongs to another, the latter may bring an unjust enrichment claim for "money had and received." See Staats v. Miller, 243 S.W.2d 686, 687–88 (Tex. 1951); Amoco Prod. Co. v. Smith, 946 S.W.2d 162, 164 (Tex.App.—El Paso, 1997, no writ) ("A cause of action for money had and received

belongs conceptually to the doctrine of unjust enrichment."); Burlington Northern R.R. Co. v. Southwestern Elec. Power Co., 925 S.W.2d 92, 101 n.5 (Tex.App.——Texarkana 1996, no writ) (opin. on rehearing).  To recover, the plaintiff need only show that the defendant holds money which in equity and good conscience belongs to the plaintiff.  Staats, 243 S.W.2d at 687–88; see Doss v. Homecoming Financial Network, Inc., 210 S.W.3d 706, 711 (Tex.App.——Corpus Christi 2006, pet. struck) ("A cause of action for money had and received is not based on wrongdoing, but, instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" (quoting Amoco Prod., 946 S.W.2d at 164)); Hunt v. Baldwin, 68 S.W.3d 117, 132 (Tex.App.——Houston [14 Dist.] 2001, no pet.) (same); Greer v. White Oak State Bank, 673 S.W.2d 326, 329 (Tex.App——Texarkana 1984, no writ) (same).

The evidence in the record relating to the Bank's damages, and the allegations, taken as true, found in the Bank's Second Amended Complaint and in Mueller's attached affidavit, establish that Lozano personally received $60,000.00 that belongs in equity and good conscience to the Bank:

- $25,000.00 for the cashier's check (No. 45180375) made payable to Lozano dated May 1, 2009. (Dkt. 91-3 at 31.)

- $25,000.00 for the cashier's check (No. 45180433) made payable to Lozano dated May 26, 2009. (Dkt. 91-3 at 33.)

- $10,000.00 for the cashier's check (No. 45180619) made
  payable to Lozano dated August 3, 2009. (Dkt. 91-3 at 35.)

Accordingly, the Court will enter default judgment on the Bank's
unjust enrichment claim against Lozano for $60,000.00, along
with pre-judgment interest.

Compass Bank's allegations, taken as true, and the evidence
in the record relating to its damages, establish that INXSS
received $705,000.00 that belongs in equity and good conscience
to the Bank:

- $5,000.00 for the credit to Account #xxxxxx2024 on
  September 18, 2009 (Dkt. 91-3 at 20);

- $75,000.00 for the credit to Account #xxxxxx2024 on October
  5, 2009 (Dkt. 91-3 at 9);

- $75,000.00  for the credit to Account #xxxxxx2024 on
  November 3, 2009 (Dkt. 91-3 at 11);

- $200,000.00 for the credit to Account #xxxxxx2024 on
  November 18, 2009 (Dkt. 91-3 at 13); and

- $350,000.00 for the credit to Account #xxxxxx2024 on
  December 1, 2009 (Dkt. 91-3 at 15).

Accordingly, the Court will enter default judgment on the Bank's
unjust enrichment claim against INXSS for $705,000.00, along
with pre-judgment interest.  That figure does not include any
amounts that INXSS might have received from Defendant Raymond
Reina's purchase of vehicles using cashiers checks # 45180845 or
# 45180848.  (Dkt. 103 at ¶ 68; Dkt. 103-1 at 19, Ex. 1-G.)  The
Court excludes that amount without prejudice to the Bank
submitting evidence establishing the precise amount INXSS

received in that purchase and moving that it be added to the Judgment.

### C.2. *Conversion*

"Money is subject to conversion only when it can be described or identified as a specific chattel, and not where an indebtedness may be discharged by the payment of money generally." Estate of Townes v. Townes, 867 S.W.2d 414, 419 (Tex.App.——Houston [14th Dist.] 1993, writ denied). "An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money." Houston Nat'l Bank v. Biber, 613 S.W.2d 771, 774-75 (Tex.Civ.App.——Houston [14th Dist.] 1981, writ ref'd n.r.e.).[8]

The Bank's allegations do not establish the obligation to return specific instruments, cash, or coins, requisite for a conversion claim. The Bank can be compensated for Defendants' acquisition of its funds through the payment of money generally.

---

[8] See also Jones v. Hunt, 12 S.W. 832, 833 (1889); Houston Nat'l Bank v. Biber, 613 S.W.2d 771, 774-75 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.) (conversion of a cashiers check possible if defendant receives the check under an arrangement obligating him to return the specific check); Marston v. Hill, 32 S.W.2d 520, 523 (Tex.Civ.App. El Paso 1930, no writ) ("'trover lies for the conversion of money only when there is an obligation resting on the defendant not to convert to his own use specific coin or notes.'" (quoting 26 Ruling Case Law 1101-02 (William Mark McKinney & Alberto Burdett Rich eds., Thompson, 1914-1921))).

Moreover, the measure of damages for conversion is typically the fair market value of the property at the time and place of conversion, <u>United Mobile Networks, L.P. v. Deaton</u>, 939 S.W.2d 146, 147 (Tex. 1997), so the Bank's damages for conversion would not exceed the restitution available under its unjust enrichment claim.   The Court will not enter judgment against Lozano and INXSS for conversion at this time.

C.3. *Fraud and RICO*

To prevail on a Texas-law fraud claim, a plaintiff must show that: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and thereby suffered injury. <u>Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.</u>, 51 S.W.3d 573, 577 (Tex. 2001).   Rule 9(b), Fed. R. Civ. P., requires that a fraud plaintiff "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"   <u>Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.</u>, 365 F.3d 353, 362 (5th Cir. 2004)

(quoting <u>Williams v. WMX Technologies, Inc.</u>, 112 F.3d 175, 177–78 (5th Cir. 1997)).

The Bank's allegations do not suffice to make out the elements of a fraud committed by Lozano and INXSS. After Villarreal's employment was terminated in December, 2009, the Bank alleges that Reina II contacted the Bank and claimed that all of the funds in "his accounts" came from "cash and credit deposits from running his bar, Reina's Ultra Lounge, Inc." (Dkt. 103-1, Mueller Aff., at ¶ 7.)  However, this statement was made after the funds had been misappropriated, and there is no indication that the Bank in any way relied on Reina II's assertion.  The Bank does not identify any other statements made by Lozano or Reina II that might form the basis of its fraud claim.

The Bank asserts that "[b]y transferring and/or receiving funds, all Defendants represented to [the Bank] that they were entitled to receive and use these funds."  (Dkt. 103 at ¶ 124.) The Bank states that "[t]he dates, methods, and amounts of the fraud are reflected in the Mueller Affidavit . . . ."  (<u>Id.</u>) The Mueller affidavit explains that Villarreal signed debit tickets for each inter-account transfer and each cashiers check that used funds taken directly from the non-consenting customers' accounts.  (Dkt. 103-1, ¶¶ 12–24, Ex. 1-A to 1-C.) However, none of the other Defendants were bank employees, and

none of them signed the tickets debiting non-consenting customers' accounts. Mueller's affidavit supports the Bank's allegation that Lozano and INXSS received funds misappropriated by Villarreal and that they quickly withdrew the portion of those funds that she credited to INXSS's account. (Dkt. 103-1 at ¶¶ 19–20, 31.) However, Villarreal was able to credit funds to the corporate defendants' accounts and issue cashiers checks without any act on the part of Lozano, Reina II, or INXSS, much less a representation to the Bank that they were entitled to the misappropriated funds. Non-verbal acts, like withdrawing funds from an account or cashing a check, can constitute intentional representations, but only if the actor intends that his conduct be observed and that the observer interpret it as conveying an assertion of fact. The Bank's allegations do not suggest that Lozano and INXSS intended the Bank to observe their withdrawal of the funds or their use of the cashiers checks.

Mere receipt and withdrawal of the funds could support misrepresentation by silence if Lozano and INXSS had a duty to disclose how they acquired the funds to the Bank. See Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001) ("[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent.") However, "[g]enerally, no duty of disclosure arises without evidence of a confidential or

fiduciary relationship." <u>Insurance Co. of North America v. Morris</u>, 981 S.W.2d 667, 674 (Tex. 1998). Texas appellate courts have recognized three other situations in which a duty to speak may arise: "(1) when one voluntarily discloses information, he has a duty to disclose the whole truth; (2) when one makes a representation, he has a duty to disclose new information when he knows the new information makes the earlier representation misleading or false; and (3) when one makes a partial disclosure and conveys a false impression, he has a duty to speak." <u>BP America Production Co. v. Marshall</u>, 288 S.W.3d 430, 446 (Tex.App.——San Antonio 2008, pet. granted); <u>see also</u>, <u>e.g.</u>, <u>Anderson, Greenwood & Co. v. Martin</u>, 44 S.W.3d 200, 212 (Tex.App.——Houston [14th Dist.] 2001, pet denied) (collecting cases). The Bank's allegations do not suggest any of these circumstances arose with respect to Lozano and INXSS. Because the Bank's allegations of state-law fraud fall short of the standard set by Rules 8 and 9, Fed. R. Civ. P., the Court cannot at this time render default judgment against Lozano and INXSS on that claim.

The Bank's allegations are also insufficient to establish the elements of a claim against Lozano and INXSS under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. §§ 1961–68. In <u>Reves v. Ernst & Young</u>, the Supreme Court held that RICO liability requires an association with the

alleged RICO enterprise such that the defendant "participate[s] in the operation or management of the enterprise itself . . . ." 507 U.S. 170, 186 (1993). The Bank asserts that Lozano and INXSS had the requisite association with the Bank "because they maintained or controlled bank accounts with [the Bank]." (Dkt. 103 at ¶ 86.) Having a business relationship with a RICO enterprise does not constitute operation and management of the enterprise's affairs necessary for RICO liability. See Reves, 507 U.S. at 175–76, 86 (providing auditing services for a corporate RICO enterprise did not constitute the requisite operation or management of its affairs); In re Mastercard Int'l, Inc., 132 F.Supp.2d 468, 488-90 (E.D. La. 2001), aff'd, 313 F.3d 257 (credit card companies' payment services to alleged RICO enterprise did not satisfy Reves test); Succession of Wardlaw v. Whitney National Bank, No. 94-2026, 1994 WL 577442 at *5 (E.D. La., Oct. 17, 1994) (bank did not participate in conduct of corporate RICO enterprise's affairs by processing transactions among accounts belonging to the enterprise and to persons from whom the enterprise's principals were misappropriating funds); Interallianz Bank AG v. NYCAl Corp., No. 93 CIV. 5024, 1994 WL 177745 at **3, 7 (S.D.N.Y., May 6, 1994) (Bank's provision of account services to RICO enterprise and financing of RICO enterprise's transactions did not satisfy Reves test). The Bank having failed to allege a sufficient association between the

alleged RICO enterprise and either Lozano or INXSS, the Court will not at this time enter judgment against them on the RICO claim.[9]   Also, as indicated in C.5 below, this Memorandum does not address potential liability for RICO conspiracy.

C.4. *The Texas Theft Liability Act*

The Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§ 134.001–134.005 (TTLA), provides that a person who commits theft by unlawfully appropriating property as described by §§ 31.03–31.07 of the Texas Penal Code is liable for the resulting injury.   See Tex. Civ. Prac. & Rem. Code §§ 134.003(a); 134.002(2).   Texas Penal Code, § 31.03(a) states, "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property."   "Appropriate" is defined to mean:

    (A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or

    (B) to acquire or otherwise exercise control over property other than real property.

Tex. Penal Code § 31.01(4).   "Property" is defined to mean:

---

[9]   The Court also notes that the Bank's allegations do not specifically identify any fraudulent statements on the part of INXSS or Lozano that might constitute wire fraud under 18 U.S.C. § 1343, or bank fraud under 18 U.S.C. § 1344.   Rule 9's heightened pleading standard applies to fraud allegations that serve as predicates for RICO claims.   Williams v. WMX Technologies, Inc., 112 F.3d 175, 177–78 (5th Cir. 1997); Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1138 (5th Cir. 1992).

(A) real property;

(B) tangible or intangible personal property including anything severed from land; or

(C) a document, including money, that represents or embodies anything of value.

§ 31.01(5).   The Texas Court of Criminal Appeals has held that an electronic transfer between bank accounts is an appropriation of property for purposes of § 31.01.   Coats v. State, 712 S.W.2d 520, 523 (Tex. Crim. App. 1986); see also Bailey v. State, 885 S.W.2d 193, 1999 (Tex.App.——Dallas 1994, writ ref'd).   An appropriation of property is "unlawful" for purposes of § 31.03(a) if:

(1) it is without the owner's effective consent; [or]

(2) the property is stolen and the actor appropriates the property knowing it was stolen by another.

Tex. Penal Code § 31.03(b)(1), (2).[10]   If a third party appropriates property with the consent of a fiduciary whom the third party knows is acting with an intent to unlawfully deprive the owner of his property, the consent is not effective.   See § 31.01(3)(B) (consent not effective when "given by a person the actor knows is not legally authorized to act for the owner.");

---

[10] "Steal" is defined to mean "to acquire property or service by theft."   Tex. Penal Code § 31.01(7), and property is therefore "stolen" for purposes of § 31.03(b)(2) once it has been "acquire[d] . . . by theft." Cf. Stewart v. State, 44 S.W.3d 582, 587 (Tex. Crim. App. 2001) (Relying on definition of "steal" in § 31.01(7) to justify concluding that property is "stolen," for purposes of a theft-specific venue provision, § 13.08, at the moment it is acquired by theft.)

<u>Freeman v. State</u>, 707 S.W.2d 597, 605–06 (Tex. Crim. App. 1986) (when a fiduciary "decides, for whatever reason, to unlawfully and permanently deprive the lawful owner of the property, he is then acting in an unauthorized capacity, i.e., he is then exercising unauthorized control over the property, and is not exercising authorized control over the property."). If the fiduciary himself exercises control over property with an intent to unlawfully deprive the owner of it, the fiduciary "at that moment in time . . . has committed the offense of theft." <u>Id.</u> at 606; <u>see also</u> <u>Bailey</u>, 885 S.W.2d at 198–99 ([defendant fiduciary] committed theft when he moved funds between bank accounts in order to utilize them for his personal benefit).

The Bank alleges that INXSS knew Villarreal had stolen the funds she credited to INXSS account, and that INXSS "had no right to receive the funds." (Dkt. 103 at ¶ 111.) The Bank also alleges that INXSS "used the funds for its own uses and benefit thereby demonstrating intent to deprive [the Bank] of the customer funds." (<u>Id.</u>) Taken as true, the Bank's allegations establish that INXSS appropriated the Bank's funds when INXSS's officers, Lozano and Reina II, withdrew funds from INXSS's account. The Bank's allegations also establish that INXSS did not have the Bank's effective consent for the withdrawals, and that INXSS intended to permanently deprive the Bank of the funds withdrawn. The withdrawals from INXSS's

account, number xxxxxx2440, thus constituted theft within the meaning of Texas Penal Code §§ 31.03–31.07. <u>See</u> § 31.03(a) ("A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property."); § 31.03(b) (an appropriation is unlawful if it is "without the owner's effective consent" or if "the property is stolen and the actor appropriates the property knowing it was stolen by another."). The Bank's actual damages for the TTLA liability are $684,483.57, the amount of misappropriated money that the evidence shows was withdrawn from INXSS's account. Recovery of those damages is duplicative with the Bank's recovery for unjust enrichment. However, a "person who prevails in a [TTLA] suit . . . shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. § 134.005(a). The Court will address the issue of attorneys' fees below.

C.5. *The Bank's Other Claims*

The Bank has also brought claims against Lozano and INXSS for RICO conspiracy, civil conspiracy, and conspiracy to violate fiduciary duty. These claims are intertwined with the Bank's allegations against other Defendants who are still litigating the nature of their involvement in the taking of the Bank's funds, as is the issue of joint and several liability. The Court will await further development of the record before

assessing the sufficiency of the Bank's allegations with respect its various conspiracy claims and the extent of Lozano's and INXSS's joint and several liability for the other Defendants' conduct.

### C.6. *INXSS's Corporate Form*

The Bank asserts that "Reina II and Lozano are liable for the actions of INXSS Motors, a corporation in which they have a financial interest, ownership, or control." (Dkt. 103 at ¶ 153.) The Bank asserts that "[t]he corporate form of the corporate defendants should be disregarded because the forms were: (a) used as a sham to perpetuate a fraud; (b) operated as a mere conduit of the individual defendants; and (c) used to protect against the discovery of a crime or to justify a wrong." (Id. at ¶ 156.) These conclusory assertions aside, the Bank's factual allegations do not establish that INXSS was created solely for these purposes, that it was not an enterprise distinct from its officers, or that it never operated as a legitimate business before receiving misappropriated funds. The Court will await further development of the record before determining whether to disregard INXSS's corporate form.

### D. Attorneys' Fees

In its Order of October 12, 2010 (Dkt. 115), the Court ordered that Lozano and INXSS compensate the Bank for the

reasonable costs and attorneys' fees "incurred in the preparation of the Bank's first motion for default judgment (Dkt. 91), the Bank's 2nd motion for default judgment (Dkt. 104), and the deposition at which Lozano failed to appear." (Dkt. 115 at 2.)  The Bank has provided documentation of $18,125.00 in fees and costs for these items in its fee motion (Dkt. 128), which is supported by a declaration by Attorney Davis (Dkt. 128-1).  Davis's declaration includes an itemized breakdown of the time expended on these tasks by the Bank's counsel's attorneys and paralegals.  (Id. at 7.)  In the later declaration submitted with the Bank's third motion for default judgment, Davis avers hat Compass Bank incurred $1,755.00 in attorney's fees and costs for the preparation of the joint stipulation and the Bank's third motion for default judgment.  (Dkt. 145-2 at ¶¶ 8.)  That declaration includes an itemized breakdown of the work done on those tasks.  (Dkt. 145-2 at Ex. B-1.)

Per Lozano and INXSS's joint stipulation (Dkt. 126), the Bank is entitled to all reasonable costs and attorneys' fees incurred in preparation of the stipulation.  (Dkt. 126 at ¶ 3.) The Bank is entitled to the fees incurred preparing the third motion for default judgment, as expenses caused by Lozano and INXSS's failure to comply with the Court's order with respect to the stipulation.  Rule 37(b)(2)(C); 37(d)(3), Fed. R. Civ. P.

Fees for work by a paralegal are not recoverable as costs, and they are generally recoverable as attorneys' fees only to the extent that the paralegal performed work traditionally done by an attorney while under an attorney's supervision. <u>Allen v. U.S. Steel Corp.</u>, 665 F.2d 689, 697 (5th Cir., Unit B, 1982); <u>Jones v. Armstrong Cork Co.</u>, 630 F.2d 324, 325, 325 n.1 (5th Cir. 1980). However, Rule 37, Fed. R. Civ. P., requires the Court to order that a party who has disobeyed discovery orders or failed to attend its own deposition pay all of "the reasonable expenses, including attorney's fees, caused by the failure . . . ." Rule 37(b)(2)(C); 37(d)(3). To the extent they are not recoverable as costs or attorneys' fees, the paralegal fees listed in Davis's declarations are recoverable as litigation expenses under Rule 37.

The rates charged by the Bank's attorneys are substantially greater than the usual and customary fees charged by attorneys in the Laredo Division. <u>Compare</u> (Dkt. 128-1 at ¶ 10, Ex. A-1); <u>with</u> State Bar of Texas, Dept. of Research & Analysis, <u>Hourly Rates in 2005 Report</u> 23, 30 (Sept. 21, 2005). However, Lozano and INXSS's failure to respond to the "Application for Attorneys' Fees and Costs" is taken as a representation of no opposition. Local Rules 7.3, 7.4; <u>cf.</u> <u>U.S. for Use and Benefit of Lochridge-Priest, Inc. v. Con-Real Support Group, Inc.</u>, 950 F.2d 284, 290 (5th Cir. 1992) (failing to object to a motion for

attorneys' fees within the time allowed by the District Court's local rule precludes challenging the sufficiency of the evidence supporting the fee award on appeal) (citing <u>Pope v. MCI Telecommunications Corp.</u>, 937 F.2d 258, 267 (5th Cir. 1991)). Accordingly, Lozano and INXSS have waived any possible objection to the billing rates and expended hours indicated by Davis's declarations.  The Court will order Lozano and INXSS to pay the Bank $19,880.00 in costs, fees, and other litigation expenses incurred as a result of Lozano and INXSS's failure to participate in discovery, disregard of the Court's Orders, and breach of their promises to the Court.

Having prevailed on its claim under the Texas Theft Liability Act, the Bank may also be entitled to additional attorneys' fees from INXSS motors.  The Bank may move for these fees within the time permitted by Rule 54, Fed. R. Civ. P., and Local Rule 54.2.  The Bank is advised that any fee request must be supported by detailed documentation, including itemized billing records, descriptions of the particular tasks completed, and explanations of the experience and qualifications of the attorneys or paralegals who performed them.

E.    <u>Judgment Interest</u>

State law governs the award of pre-judgment interest in diversity cases.  <u>Meaux Surface Protection, Inc. v. Fogleman</u>,

607 F.3d 161, 172 (5th Cir. 2010) (citing Harris v. Mickel, 15 F.3d 428, 429 (5th Cir. 1994)).  A Texas statute provides for pre-judgment interest on judgments in contract, wrongful death, personal injury, property damage, and condemnation cases.  Tex. Fin. Code §§ 304.002, 304.102, 304.201.  In cases not covered by statute, Texas law allows for an award of equitable pre-judgment interest.  Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985); Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 531 (Tex. 1998); Meaux, 607 F.3d at 172.  Pre-judgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed. Kenneco, 962 S.W.2d at 531.  There is no indication that the Bank provided Lozano or INXSS with a written notice of its claims before filing suit on February 2, 2010.

Except for contract claims, pre-judgment interest accrues at the postjudgment rate for judgments issued by Texas courts, set by the consumer credit commissioner.  Tex. Fin. Code § 304.003;  Kenneco, 962 S.W.2d at 532.  That rate is presently 5%.[11]  Pre-judgment interest is computed as simple interest. Kenneco, 962 S.W.2d at 531.  Accordingly, the judgment against Lozano will include $3,756.16 in pre-judgment interest on the $60,000.00 portion of the judgment arising from the Bank's

---

[11] http://www.occc.state.tx.us/pages/int_rates/Index.html

unjust enrichment claim. The judgment against INXSS will include $44,134.93 in pre-judgment interest on the $705,000.00 portion of the judgment arising from the Bank's unjust enrichment and Texas Theft Liability Act claims.

Postjudgment interest on this Court's judgments is fixed at the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. 28 U.S.C. § 1961(a). That rate is 0.22%. Postjudgment interest shall be computed daily to the date of payment, and shall compound annually. 28 U.S.C. § 1961(b).

## IV. CONCLUSION

The Bank's "Application for Attorneys' Fees and Costs" (Dkt. 128) is GRANTED. Lozano and INXSS are ORDERED to pay the Bank $19,880.00 in attorneys' fees and other expenses caused by their disregard of the Court's orders and Lozano's failure to attend his deposition.

Compass Bank's third motion for default judgment against Defendants Robert Lozano and INXSS Motors, Inc., (Dkt. 145) is GRANTED to the extent that the Court will enter judgment against Robert Lozano on the Bank's unjust enrichment claim, and the Court will enter judgment against INXSS for the Bank's unjust enrichment and Texas Theft Liability Act claims. With respect

to the Bank's other claims, the motion is DENIED without prejudice to the Bank seeking amendment of the judgments after further development of the record.

The judgment against Lozano will include $60,000.00 for the Bank's unjust enrichment claim, $3,756.16 in pre-judgment interest, and $19,880.00 in sanctions under Rule 37. The amount of the judgment against INXSS will include $705,000.00 for the Bank's unjust enrichment and Texas Theft Liability claims, $44,134.93 in pre-judgment interest, and $19,880.00 in sanctions under Rule 37. Lozano and INXSS are jointly and severally liable for the $19,880.00 sanction.

DONE at Laredo, Texas, this 5th day of May, 2011.


George P. Kazen
Senior United States District Judge