o

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        LAREDO DIVISION


COMPASS BANK,                     §
                                  §
          Plaintiff,              §
                                  §
v.                                §   Civil Action No. L-10-8
                                  §
CELINA VILLARREAL, et al.,        §
                                  §
          Defendants.             §
```

MEMORANDUM AND ORDER

Pending are Compass Bank's February 11, 2011, motion for default judgment against Defendant Gerardo Benavides (Dkt. 175), and the Bank's February 3, 2011, motion for default judgment against Defendant Johanna Espinoza (Dkt. Nos. 167, 168). Neither Espinoza nor Benavides has responded.

I. PROCEDURAL BACKGROUND

Espinoza and Benavides were joined to this suit in the Bank's Second Amended Complaint (Dkt. 103), which became effective on October 12, 2010. (Dkt. 115 at 1.) Benavides was served with a summons and copy of the Second Amended Complaint on October 13, 2010. (Dkt. 124 at 2; Dkt. 196 at 2.) An answer or motion under Rule 12, Fed. R. Civ. P., was accordingly due from Benavides on November 3, 2010. Rule 12(a)(1)(A)(i). In a declaration of November 30, 2010, Attorney Tracy McCreight,

counsel for Compass Bank, reported that the Bank's counsel had received no answer or other responsive paper from Benavides. (Dkt. 151-1 at ¶ 6.)  The record contains no indication that Benavides has responded to the Bank's suit in any manner during the subsequent nine months.

After Espinoza's counsel executed the waiver of service on her behalf, she had until December 17, 2010, to file an answer or Rule 12 motion in response to the Second Amended Complaint. Rule 12(a)(1)(A)(ii).  Espinoza did not file an answer or Rule 12 motion with the Court, and Attorney McCreight reported in a declaration of December 22, 2010, that the Bank's counsel had received no answer or other responsive paper from Espinoza. (Dkt. 159-1 at ¶ 6.)  There is no indication in the record that Espinoza has responded to the Bank's suit in any fashion beyond executing the waiver of service.  The Clerk of the Court entered default against Benavides on December 2, 2010. (Dkt. 154.) Default was entered against Espinoza on June 16, 2011. (Dkt. 237.)

## II. APPLICABLE LAW

A.  <u>Default Judgment Under Rule 55</u>

Federal Rule of Civil Procedure 55 authorizes an entry of default when a properly noticed party fails to appear in a case, appears but fails to file a pleading, or "fail[s] to . . .

otherwise defend" the lawsuit. Rule 55(a). If the plaintiff's claim is not for a sum certain or a sum that can be made certain by computation, he must apply to the Court for a default judgment. Rule 55(b)(2).

Whether to issue a default judgment is "'committed to the discretion of the district judge.'" Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001) (quoting Mason v. Lister, 562 F.2d 343, 345 (5th Cir. 1977)). A claimant "'is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.'" Lewis, 236 F.3d at 767 (quoting Ganther v. Ingle, 75 F.3d 207, 212 (5th Cir. 1989)). Default judgments are typically appropriate only when a party has abandoned the case and "'the adversary process has been halted because of [the] essentially unresponsive party.'" Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n, 874 F.2d 274, 276 (5th Cir. 1989) (quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)).

B. The Effect of Default

By defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515

F.2d 1200, 1206 (5th Cir. 1975) (cited in <u>CJC Holdings v. Wright & Lato, Inc.</u>, 979 F.2d 60, 66 n.4 (5th Cir. 1992)). However, "[a] default is not treated as an absolute confession by defendant of his liability and of the plaintiff's right to recover." <u>Id.</u> Rather, the Court is obliged to limit the default judgment to the claims supported by the facts set forth in the claimant's pleading. <u>See id.</u> ("The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law."); <u>see also</u> <u>Atlantic Recording Corp. v. Lopez</u>, 5:06-cv-179, 2007 WL 2010752, *1 (S.D. Tex., July 5, 2007) (unpublished) (Alvarez, J.) ("[T]he best reading of the case law is that default judgment may be awarded only if the facts alleged in the complaint, if assumed true, would establish liability as a matter of law." (citing <u>Nishimatsu</u>, 515 F.2d at 1206)). The Court must also ensure that the claimant's damages are supported by evidence. <u>U.S. For Use of M-CO Const., Inc. v. Shipco General, Inc.</u>, 814 F.3d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").

### III. DISCUSSION

A.  <u>Default Judgment is Merited</u>

The adversary process between the Bank and Benavides and Espinoza has been halted, indeed could never begin, because of

4 / 18

Espinoza's and Benavides's complete failure to respond to the Second Amended Complaint or otherwise defend the suit. Accordingly, default judgment is merited against each of them under Rule 55, Fed. R. Civ. P.

B. <u>Compass Bank's Well-Pleaded Facts</u>

Having defaulted, Benavides and Espinoza have admitted the facts alleged in the Second Amended Complaint and in Mueller's February 3, 2010, affidavit (Dkt. 103-1), which was filed as an attachment to the Second Amended Complaint. (Dkt. Nos. 1-1, 68-1, 103-1, 199.) <u>See</u> Rule 10(c), Fed. R. Civ. P. ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.") Taken as true, the factual allegations relevant to the claims against Espinoza and Benavides establish the following:

Defendant Celina Villarreal was employed in the "Wealth Management Division" of Compass Bank's Laredo, Texas, office from 1998 until December, 2009. (Dkt. 103 at ¶ 24.) In December, 2009, the Bank discovered that during 2009 Villarreal had effected several debits from accounts belonging to customers who did not authorized the debits. (<u>Id.</u> at ¶¶ 32–60.) Villarreal credited some of the funds to customer accounts belonging to four businesses owned and controlled by her associates. (<u>Id.</u>) One of those accounts, account xxxxxx2440,

belonging to Defendant Reina's Ultra Lounge, was credited with $3,717,545.27. (Id. at ¶ 34a.) By the time the Bank discovered Villarreal's activities, most of the funds Villarreal had credited to account xxxxxx2440 had been withdrawn. As of February 3, 2010, account xxxxxx2440's remaining balance was $158,734.36. (Id. at ¶ 37.)

Villarreal used some of the funds credited to account xxxxxx2440 to effect transactions for the benefit of various other defendants, including Espinoza and Benavides. (Id. at ¶¶ 30, 41.) Some of these transactions consisted of debiting account xxxxxx2440 and crediting the funds to another Defendant-controlled account, others took the form of cashier's checks covered by funds debited from account xxxxxx2440. (Id. at ¶ 41.) Neither Espinoza nor Benavides was "entitled to keep any of the wrongfully transferred funds." (Id. at ¶ 144.)

C. Compass Bank's Claims Against Benavides and Espinoza

The Bank has brought the following claims against Benavides and Espinoza:

- (1) Unjust enrichment and restitution (Dkt. 103 at ¶¶ 143–146);
- (2) Conversion (Id. at ¶¶ 134–138);
- (3) State-law fraud (Id. at ¶¶ 123–129);
- (4) Aiding and abetting breach of fiduciary duty (Id. at ¶¶ 118–122);

    (5) Violations of 18 U.S.C. §§ 1962(c) of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. §§ 1961–68 (<u>Id.</u> at ¶¶ 86–90);

    (6) Violations of 18 U.S.C. §§ 1962(d), which prohibits conspiracy to violate the RICO statute (<u>Id.</u> at ¶¶ 88–90);

    (7) Civil conspiracy (<u>Id.</u> at ¶¶ 139–142).

Invoking 18 U.S.C. § 1964(c), the Bank asks that the Court's judgments against Benavides and Espinoza include treble damages and awards of attorney's fees. (Dkt. 175 at 4, 7; Dkt. 168 at 4, 6.)

    The Court will render default judgment against Benavides and Espinoza on only the Bank's unjust enrichment claim. Their liability under that claim is discussed below. The Court recently granted a motion from the Bank for default judgment against Defendants Robert Lozano and INXSS Motors, Inc. (Dkt. 205.) In its Order of May 5, 2010, the Court identified various respects in which the Bank's factual allegations fail to establish liability for conversion, fraud, and violation of 18 U.S.C. § 1962(c) on the part of Lozano and INXSS. (Dkt. 205 at 27–33.) The Bank's factual allegations suffer from the same shortcomings with respect to its fraud, conversion, and § 1962(c) claims against Benavides and Espinoza. Therefore, the Court will not render default judgment at this time on those three claims. This precludes awarding treble damages or attorney's fees under 18 U.S.C. § 1962(c).

The issue of Espinoza's or Benavides's joint and several liability for other Defendants' acts is intertwined with the Bank's allegations against other Defendants, who are still litigating the nature of their involvement in the taking of the Bank's funds. That is also true of the Bank's claims against Espinoza and Benavides for violations of 18 U.S.C. § 1962(d) (RICO conspiracy), for civil conspiracy, and for aiding and abetting breaches of fiduciary duty. Accordingly, the Court will await further development of the record before assessing the sufficiency of the Bank's allegations with respect its conspiracy and aiding-and-abetting claims as well as the extent of Espinoza's or Benavides's joint and several liability for other Defendants' conduct.

Unjust enrichment encompasses a number of equitable doctrines designed to prevent a party from unjustly retaining benefits conferred by another without compensation. When one party has been unjustly enriched by receiving money that in equity and good conscience belongs to another, the latter may bring an unjust enrichment claim for "money had and received." See Staats v. Miller, 243 S.W.2d 686, 687–88 (Tex. 1951); Amoco Prod. Co. v. Smith, 946 S.W.2d 162, 164 (Tex.App.—El Paso, 1997, no writ) ("A cause of action for money had and received belongs conceptually to the doctrine of unjust enrichment."); Burlington Northern R.R. Co. v. Southwestern Elec. Power Co.,

925 S.W.2d 92, 101 n.5 (Tex.App.—Texarkana 1996, no writ) (opin. on rehearing). To recover, a plaintiff must show that the defendant holds money which in equity and good conscience should be returned to the plaintiff. Staats, 243 S.W.2d at 687-88; see Doss v. Homecoming Financial Network, Inc., 210 S.W.3d 706, 711 (Tex.App.—Corpus Christi 2006, pet. struck) ("A cause of action for money had and received is not based on wrongdoing, but, instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" (quoting Amoco Prod., 946 S.W.2d at 164)). However, attaining restitution of money paid to another requires showing that allowing the payee to retain it would "be actually unjust under the principles of equity." Mowbray v. Avery, 76 S.W.3d 663, 679-80 (Tex.App.—Corpus Christi, 2002, pet. struck). Restitution is not appropriate when consideration was provided for the payment. See Oxford Finance Companies, Inc. v. Velez, 807 S.W.2d 460, 466 (Tex.App.—Austin, 1991, writ denied) (restitution requires showing that plaintiff paid money to defendant, that consideration defendant gave "later failed in whole or in part," and that allowing defendant to retain the payment would be unconscionable). The Court will issue judgments against Espinoza and Benavides for those gratuitous payments that the Bank made to Benavides or

Espinoza as a result of Villarreal's manipulation of the Bank's account and transaction records.

D.   **Compass Bank's Restitution**

It remains for the Court to determine what recoverable payments the evidence in the record shows Benavides and Espinoza received. For that assessment, the Court will rely on Mueller's February 3, 2010, affidavit (Dkt. 103-1), her declarations of February 2, 2011 (Dkt. 167-2), and February 10, 2011, (Dkt. 175-2), the exhibits the Bank submitted at the preliminary injunction hearing of February 23, 2010, and Mueller's Affidavit of August 2, 2011, addressing the Bank's practices regarding cashier's checks (Dkt. Nos. 286-1, 286-2).

D.1.   *Money Received by Johanna Espinoza*

Espinoza is listed as payee on Cashier's Check # 45810540, which Villarreal issued June 25, 2009, for $45,000.00. (Dkt. 167-2 at ¶ 5a; Dkt. 286-1 at ¶ 12(d); Dkt. 286-2 at Ex. 4 (pp. 57-58).)  To cover Check # 45810540, Villarreal debited $45,000.00 from account xxxxxx2440 on June 26, 2011. (Dkt. 286-1 at ¶ 12(d); Dkt. 286-2 at Ex. 4 (pp. 57-58).) The check was presented to the Bank, and paid, on August 28, 2009. (Dkt. 286-1 at at ¶12(d); Dkt. 286-2 at Ex. A-4 (p. 53).)   Mueller's August 2, 2011, affidavit explains the procedures by which a

teller at Compass Bank must verify the identity of a person presenting a cashier's check for payment:

> The teller must review a driver's license or other government-issued identification card from the person seeking to cash the cashier's check, and the name on the identification card must match the name of the named payee on the check. The teller must verify the check is properly indorsed and must verify the indorsement against the identification card. The picture must also match the person seeking to cash the check. In most cases, the teller will write down the driver's license number on the cashier's check, and may also write down the date of birth. In some instances, if the customer is known to the teller, the teller may only write "KC" on the check. In instances where the payee is not a customer of Compass Bank . . . the teller will also require a thumb print.

(Dkt. 286-1 at ¶ 7.) Check # 45810540 bears only one indorsement, consisting of a signature that appears to read "Johanna Espinoza." (Dkt. 286-2 at Ex. A-4 (p. 58).) A driver's license number is written on the front of the check, indicating that the teller verified that the person who presented it was the person named on the payee line. (Dkt. 286-2 at 58 (Ex. A-4).) There being no indication that the procedures described in Mueller's August 2, 2011, affidavit were not followed when Check # 45810540 was presented, the Court finds that Johanna Espinoza presented the check and received the $45,000.00 paid out to honor it. She has not reimbursed the Bank. (Dkt. 167-2 at ¶ 7.) The Court will issue a judgment against Espinoza for that amount, with pre-judgment interest.

D.2.  *Money Received by Gerardo Benavides*

Benavides is listed as the payee on two cashier's checks that Villarreal covered by debiting account xxxxxx2440. Check # 45180551, for $11,075.34, was issued on June 30, 2009. (Dkt. 175-2 at ¶¶ 6a-b.) Check # 45180551 was cashed on June 30, 2009. (Dkt. 286-1 at ¶ 12(e); Dkt. 286-2 at 59.) The cashed check is indorsed with a signature reading "Gerardo Benavides," and a driver's license number is written on the front of the check. (Dkt. 286-2 at 59.) Check # 45180684, for $5,000.00, was issued September 2, 2009. (Dkt. 175-2 at ¶¶ 6a-b.) Check # 45180684 was cashed on September 3, 2009. (Dkt. 175-2 at Ex. B-6 (p. 34).) Check # 4180684 is indorsed with the same signature that appears on Check # 4180551, and the Bank's exhibit of Check # 4180684 bears a redaction in the same place where the Bank's tellers typically write the presenter's driver's license number when a check is presented. (<u>Id.</u>) There being no indication that the procedures described in Mueller's August 2, 2011, affidavit were not followed when Checks # 4180684 and # 4180551 were presented, the Court finds that Benavides presented them and received the $16,075.34 the Bank paid to honor them. The judgment against Benavides will include that amount, with pre-judgment interest.

Villarreal debited account xxxxxx2440 and used part of the debited amounts to credit Benavides with payments against three

consumer loans the Bank had previously made to him. On February 13, 2009, Villarreal credited $19,944.26 against Consumer Loan xxx4386, and $5,169.00 against Consumer Loan xxx5199. (Dkt. 175-2 at ¶¶ 5a, 5b.) On February 17, 2009, Villarreal credited $9,744.16 against Consumer Loan xxx4742. (Id. at ¶ 5c.) On October 6, 2009, Villarreal debited $10,000.00 from account xxxxxx2440 and credited the funds to Benavides's customer account at the Bank, account xxxxxx8531. (Id. at ¶ 6c, pp. 33, 36.)

Statements for account xxxxxx8531 are not in the record, nor are records of the payment history for Benavides's consumer loans. The Bank's evidence establishes that Villarreal manipulated the Bank's records by erroneously crediting Benavides with $34,857.42 in loan payments and a $10,000.00 deposit in account xxxxxx8531. The Court will defer judgment on these amounts, however, because the Bank has not shown that Benavides took advantage of the erroneous credits to secure a benefit at the Bank's expense, for example by withdrawing more than his actual legitimate deposits entitled him to, or skipping loan payments without which the Bank could have declared him in default had its records been correct.

The authorized signors for account xxxxxx2440 are Defendants Robert R. Reina, Sr., and Robert R. Reina, II. The Bank seeks to recover for two account checks they wrote

Benavides in late 2009. (Dkt. 175 at ¶¶ 19g, 19h.) Account Check # 2440:2722, for $604.92, is dated October 30, 2009, and was cashed on November 2, 2009. (Id. at ¶ 7a, Ex. B-7 (pp. 37-38).) Account Check # 2440:2758, for $1091.31, is dated November 7, 2009, and was cashed on November 9, 2009. (Id. at Ex. B-8 (pp. 39-40).) The memo line on both of these checks reads "food sales."

Reina II and Reina Sr. wrote Benavides twenty-six other checks from account xxxxxx2440 between March 28, 2009, and November 18, 2009. The table below show those checks and # 2440:2722 and # 2440:2758, with the date each check was issued, the date it was cashed, its amount, the signor, the note in the memo line, and the page at which the check appears in the exhibits the Bank submitted at the preliminary injunction hearing of February 23, 2010. Checks # 2440:2722 and # 2440:2758 are shaded in gray.

| Check # | Date Issued | Date Cashed | Amount | Memo Line: | Page # |
|---|---|---|---|---|---|
| 2240:1986 | 3/28/09 | 3/30/09 | $400.00 | "Ending 3/27/09" | 0162 |
| 2240:2004 | 4/04/09 | 4/07/09 | $400.00 | "Ending 4/2/07" | 0174 |
| 2240:2045 | 4/18/09 | 4/20/09 | $450.00 | "Ending 4/17/09" | 0178 |
| 2240:2063 | 4/25/09 | 4/27/09 | $450.00 | "payroll" | 0180 |
| 2240:2085 | 5/02/09 | 5/04/09 | $450.00 | "4-25-09/5-1-09" | 0194 |

| | | | | | |
|---|---|---|---|---|---|
| 2240:2119 | 5/16/09 | 5/18/09 | $418.00 | "Ending 5/15/09" | 0197 |
| 2240:2142 | 6/23/09 | 5/26/09 | $450.00 | "Ending 5/23/09" | 0199 |
| 2240:2160 | 5/30/09 | 6/01/09 | $450.00 | "Ending 5/29/09 | 0213 |
| 2240:2224 | 6/20/09 | 6/22/09 | $450.00 | "Ending 6/19/09" | 0220 |
| 2240:2248 | 6/26/09 | 6/29/09 | $450.00 | "Ending 6/26/09" | 0222 |
| 2240:2476 | 8/29/09 | 8/31/09 | $200.00 | "Ending 8/28/09" | 0266 |
| 2240:2505 | 9/05/09 | 9/8/09 | $400.00 | "Ending 9/9/09" | 0283 |
| 2240:2530 | 9/13/09 | 9/14/09 | $400.00 | "Ending 9/11/09" | 0285 |
| 2240:2559 | 9/19/09 | 9/23/09 | $400.00 | "Ending 9/18/09" | 0288 |
| 2240:2586 | 9/26/09 | 9/28/09 | $400.00 | "Ending 9/25/09" | 0290 |
| 2240:2617 | 10/3/09 | 10/5/09 | $400.00 | "Ending 10/2/09" | 0306 |
| 2240:2658 | 10/10/09 | 10/13/09 | $564.85 | "Rest. Sales" | 0310 |
| 2240:2476 | 8/29/09 | 8/31/09 | $200.00 | "Ending 8/28/09" | 0266 |
| 2240:2505 | 9/05/09 | 9/8/09 | $400.00 | "Ending 9/9/09" | 0283 |
| 2240:2530 | 9/13/09 | 9/14/09 | $400.00 | "Ending 9/11/09" | 0285 |
| 2240:2669 | 10/15/09 | 10/16/09 | $780.40 | "Food sales ending 10/15/09" | 0311 |
| 2240:2696 | 10/23/09 | 10/23/09 | $978.31 | "Rest. Sales" | 0314 |
| 2440:2722 | 10/30/09 | 11/2/09 | $604.92 | "Food Sales" | 0329 |
| 2440:2758 | 11/7/09 | 11/09/09 | $1091.31 | "Food Sales" | 0332 |
| 2440:2781 | 11/18/09 | 11/13/09 | $649.90 | "Food Sales ending 11/12/09" | 0335 |
| 2440:2807 | 11/20/09 | 11/23/09 | $563.57 | "Food Sales" | 0337 |
| 2440:2886 | 12/4/09 | 12/07/09 | $916.92 | "Food Sales" | 0351 |
| 2440:2905 | 12/11/09 | 12/04/09 | $910.06 | "Food Sales" | 0354 |

The Bank offers no explanation of why it seeks to recover for Checks # 2440:2722 and # 2440:2758 but not for any of the other twenty-six checks written to Benavides from account xxxxxx2440. In any event, all of checks listed on the above table appear to have been regular payments made in consideration for supplies

furnished to Defendant Reina's Ultra Lounge, Inc. Checks # 2440:2722 and # 2440:2758 will not be included in the Court's judgment against Benavides. If Reina's Ultra Lounge paid its business expenses with checks honored with funds that Villarreal had erroneously debited to account xxxxx2440, the Bank can recover the funds from Reina's Ultra Lounge.

E. Judgment Interest

State law governs the award of pre-judgment interest in diversity cases. Meaux Surface Protection, Inc. v. Fogleman, 607 F.3d 161, 172 (5th Cir. 2010) (citing Harris v. Mickel, 15 F.3d 428, 429 (5th Cir. 1994)). A Texas statute provides for pre-judgment interest on judgments in contract, wrongful death, personal injury, property damage, and condemnation cases. Tex. Fin. Code §§ 304.002, 304.102, 304.201. In cases not covered by statute, Texas law allows for an award of equitable pre-judgment interest. Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985); Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 531 (Tex. 1998); Meaux, 607 F.3d at 172. Pre-judgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed. Kenneco, 962 S.W.2d at 531. There is no indication that the

Bank provided Espinoza or Benavides with a written notice of its claims before they were joined to the suit on October 12, 2010.

Except for contract claims, pre-judgment interest accrues at the postjudgment rate for judgments issued by Texas courts, set by the consumer credit commissioner. Tex. Fin. Code § 304.003; Kenneco, 962 S.W.2d at 532. That rate is presently 5%.[1] Pre-judgment interest is computed as simple interest. Id. at 531. Accordingly, the judgment against Espinoza will include $1861.64 in pre-judgment interest on the $45,000.00 principal. The judgment against Benavides will include $665.03 in pre-judgment interest on the $16,075.34 principal.

Postjudgment interest on this Court's judgments is fixed at the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. 28 U.S.C. § 1961(a). That rate is 0.16%. Postjudgment interest shall be computed daily to the date of payment, and shall compound annually. 28 U.S.C. § 1961(b).

## IV. CONCLUSION

Compass Bank's motions for default judgment against Defendants Espinoza and Benavides (Dkt. Nos. 175, 168) are **GRANTED** to the extent that the Court will a enter judgment

---

[1] http://www.occc.state.tx.us/pages/int_rates/Index.html.

against each of them on the Bank's unjust enrichment claim. The judgment against Espinoza will include $45,000.00 for the Bank's unjust enrichment claim, and $1,861.64 in pre-judgment interest. The judgment against Benavides will include $16,075.34 for the Bank's unjust enrichment claim, and $665.03 in pre-judgment interest.

With respect to the Bank's other claims, the Bank's motions are DENIED without prejudice to the Bank seeking additional judgments after further development of the record. This disposition is also without prejudice to the Bank's attempting a further showing with respect to Account Checks # 2440:2722 and # 2440:2758, the erroneous credits against Consumer Loans xxx4386, xxx5199, and xxx4742, and the erroneous $10,000.00 credit to account xxxxxx8531.

DONE at Laredo, Texas, this 10th day of August, 2011.

_____
George P. Kazen
Senior United States District Judge